## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BINH VAN NGUYEN,**
        **Petitioner,**

**v.**                                    **Case No.  3:04cv359/MCR/MD**

**JAMES CROSBY,**
        **Respondent.**

_____

## <u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Docs. 8 & 9).  Petitioner has filed a reply.  (Doc. 11).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND[1]

At 7:15 a.m. on December 10, 2001, Debra Little locked the front door of her home located at 300 Ada Wilson Avenue, and departed for work.  (Doc. 9, Ex. B, pp.

_____

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

116-17).[2]  Upon her return at 3:00 p.m., she unlocked her front door and entered the home.  After taking just a few steps she saw her jewelry box sitting on her kitchen table.  Suspicious, she left the house and immediately telephoned police.

Q [Prosecutor]. What did you find?

A [Ms. Little].  Well, the deputies went in and checked my house before they'd let me back in.  And then when I went in, I saw that all of my drawers had been opened and ransacked through and all of my jewelry was missing out of my jewelry box except five or six earrings, loose, that it had just been dropped down, and my VCR was missing, and the back window in my den had been smashed.  It had been broken into.  And there were some other items missing through the house.

Q.  And that back window had not been smashed when you left on December 10th?

A.  No.

Q.  You said there were some other items missing.  Can you specify some of those other items?

A.  Yes.  One of the items was a K-mart bag.  I had bought a telephone at K-mart and a caller ID box and some batteries and -- back in September, and they were sitting in one of my bedrooms by the closet door, and that was gone.

Q.  Do you recall how you paid for that purchase?

A.  Yes.  Credit card.

Q.  Do you still have the receipt?

A.  Yes.  It was still in the bag.

(*Id.*, pp. 118-19).  In addition to the jewelry, VCR and items in the K-mart bag, cash in the amount of $200-$300 was taken from Ms. Little's home.  (*Id.*, p. 120).  The police eventually found the plastic K-mart bag containing the telephone, caller ID box and receipt in the possession of petitioner's co-defendant.[3]  (*Id.*, p. 103-04).  The

---

[2]Hereafter all references to exhibits will be to those provided at Doc. 9 unless otherwise noted.

[3]Petitioner's co-defendant was Antonio Jermaine Cunningham.

VCR was found in Ms. Little's yard.  (*Id.*, pp. 120-21).  The cash and jewelry were never found.  (*Id.*, p. 121).

To gain access to the home, petitioner and his co-defendant had entered through the gate in the chain-linked fence and smashed the window in the back of the home.  (*Id.*, pp. 111, 119).

> Q [Prosecutor].  To get to the window that was broken, one would have to go through that fence?

> A [Ms. Little].  They had to open the gate, which was opened, I realized, after -- when I first drive up into my driveway, I don't see the gate that goes into the backyard.  So after I had gone in the house and come back out, then I realized that the back gate was opened to my backyard.

(*Id.*, pp. 119-20).

Charles Henderson testified that in the late morning hours of December 10, 2001, he was sitting on the porch of the home located at 228 Ada Wilson Avenue. He saw petitioner and the co-defendant in the area that was just to the right of the house on 300 Ada Wilson Avenue.

> Q [Prosecutor].  They were, you say, in front of you a certain distance away down Ada Wilson?

> A [Mr. Henderson].  They were just east of the intersection of Ada Wilson and Mandalay.

> Q.  They were just east of it?

> A.  Yes, sir.

> Q.  To your side of it?

> A.  It would have been to my right, right.  They were between the corner and the house where I was.

> Q.  And 300 Ada Wilson, you said, was just to the west of that intersection?

> A.  Just to the west of the intersection of Ada Wilson and Mandalay, yes, sir.

(*Id.*, pp. 60, 63-64).  Mr. Henderson noticed that petitioner carried a black pouch bag. (*Id.*, p. 62).

> Q [Prosecutor].  Did you see anyone else at that time?
>
> A [Mr. Henderson].  Yes, sir, I did.  Shortly after I observed him [petitioner], I observed a shorter black male also walking on the north side of Ada Wilson in a generally easterly direction.  He was carrying a white or a brown-colored plastic bag in his hand.
>
> Q.  You said you saw him shortly after you saw the Asian male?
>
> A.  Yes, sir.
>
> Q.  What did the black male do at that point?
>
> A.  He crossed diagonally across Ada Wilson to the south side of Ada Wilson where the Asian male was, and he sort of scooted up to the left side of the Asian male and said, Let me have some of that, and the Asian male replied either there's plenty in here for both of us or plenty of money in here for everybody.  And then they both continued walking along the south side of Ada Wilson in a general easterly direction toward Alba Pena.
>
> Q.  From that point on, were they walking together?
>
> A.  Yes, sir, generally side by side.

(*Id.*, p. 61).  The discussion Mr. Henderson overheard appeared to relate to the contents of the black pouch bag petitioner carried.  (*Id.*, pp. 61-62).

On the same date as the 300 Ada Wilson Avenue burglary, Larry Johnson, who lived on Lakewood Road, observed petitioner and his co-defendant inside the gated fence of the home located at 1006 Lakewood Road, belonging to one Thomas Forrest.  The men looked suspicious.  The Johnson and Forrest homes are in the same neighborhood as Ms. Little's home.

> Q [Prosecutor].  Where, specifically did you see them coming from?
>
> A [Mr. Johnson].  As I was driving by, they were coming out of the yard.
>
> Q.  Which part of what yard?

A.  There was a gate and they were walking through the gate.  The gate was opened.

Q.  Was this gate on the front yard, back yard?

A.  It is a front yard.

Q.  Can you describe this gate?

A.  Generally, it was a chain-linked fence.  The gate was one that you'd open up to drive a vehicle through.

. . . .

Q.  Have you ever seen either of these individuals before?

A.  No, sir, I haven't.

Q.  So they were walking through this fenced-in front yard; is that what you're saying?

A.  Yes, sir.  That brought my attention to it because I thought they were cutting through the yard like a shortcut, but its impossible because the backyard has a real high wooden fence all around it and you just can't make a shortcut through that yard.  So that's what I was suspicious about.

(*Id.*, pp. 89-90).  After unloading some lumber at his home which took approximately 15 minutes, Mr. Johnson returned down the road.  (*Id.*, pp. 90-91).  He saw police at the residence where he had seen the men, and he gave a statement to police.  (*Id.*, pp. 91, 92-94, 96, 101).  Johnson went to look for the men, eventually finding the black man walking down a side street. (*Id.*, p. 92).  He followed the man to a house, and he saw petitioner go to the back of the same house.  (*Id.*, pp. 92-94).  He alerted the police to his discovery.  (*Id.*, p. 92).

Like the home on 300 Ada Wilson, the back window of Mr. Forrest's home was smashed.  (*Id.*, p. 99).  However, unlike the 300 Ada Wilson home, Mr. Forrest had an alarm system.  (*Id.*).  The alarm system could only be set off by motion inside the home.  (*Id.*, p. 123).  The motion sensors were located in the main living room.  (*Id.*, p. 126).  The windows on Mr. Forrest's home were not armed.  (*Id.*, p. 123).

Escambia County Sheriff's Office Deputy Steven Hall was dispatched to Mr. Forrest's home at 11:09 a.m. on December 10, 2001 in response to the alarm. (*Id.*, pp. 98-99). Upon arrival, Deputy Hall saw that the front of the home was secured, but a window in the back of the home was broken. (*Id.*, p. 100). Just inside the room with the broken window, he saw a brick lying on the bed. (*Id.*, p. 128). After securing the home Deputy Hall spoke with Larry Johnson. (*Id.*, p. 102). Mr. Johnson described the two people he observed coming from the inside of Mr. Forrest's fenced yard as a black male and another male who was "either Chinese or Oriental or Indian-type." (*Id.*, p. 102). Mr. Johnson then left to look for the two men. A short time later he returned and reported to Deputy Hall the men's location. Deputy Hall left Mr. Forrest's home and located the two individuals that matched Mr. Johnson's description on the front porch area of the home located at 230 Weis Lane. The two men identified themselves as Binh Nguyen and Antonio Cunningham. (*Id.*, p. 103). When Deputy Hall made contact with petitioner and co-defendant Cunningham, Cunningham had a plastic K-mart bag in his hand. (*Id.*, pp. 103-04). In the bag was a brand new telephone, a caller ID box and a receipt from K-mart which showed the items were purchased with a credit card in September of 2001. (*Id.*, p. 104).

Later that same day, Deputy Hall responded to Ms. Little's call concerning the burglary at 300 Ada Wilson Avenue. When he made contact with Ms. Little, he asked her in a joking manner if she, by chance, happened to have a telephone and a caller ID box in a K-mart bag. She responded that she did, and that it was in the back bedroom. When she went in the house to check for the missing items, she discovered the items and the bag were gone. (*Id.*, pp. 111-12).

Escambia County Sheriff's Office Investigator Chris Baggett investigated the burglaries at Lakewood Road and Ada Wilson Avenue. (*Id.*, pp. 113-14). Petitioner told him he had seen Cunningham with the K-mart bag before their encounter with Deputy Hall. (*Id.*, p. 114).

Thomas Laurens Forrest, Jr. owned the residence located at 1006 Lakewood Road. (*Id.*, p. 122). He was contacted by the Escambia County Sheriff's Office at approximately 12:00 p.m. on December 10, 2001 and informed that an alarm had

been set off at the Lakewood residence. (*Id.*). Forrest said that one Richard Hazucha had permission to be in the home. (*Id.*, p. 123). Petitioner and his companion did not have permission to be on the property. (*Id.*, p. 125). At the time of trial, Mr. Forrest had expended $200 to fix the broken window; however, more expense would be incurred to complete the job. (*Id.*, pp. 124-25).

The police took fingerprints from each residence. The fingerprints did not match either petitioner or co-defendant Cunningham. (*Id.*, pp. 163-64).

## PROCEDURAL HISTORY

On December 26, 2001 petitioner was charged with Burglary of an Unoccupied Dwelling (Count 1), and Criminal Mischief (Count 2), in the Circuit Court of Escambia County, Florida, case number 01-5644. (Ex. A, p. 1). Petitioner was charged only with the burglary of 1006 Lakewood Road. Petitioner's co-defendant, Antonio Jermaine Cunningham, was charged in case number 01-5676 with Burglary of a Dwelling (300 Ada Wilson Avenue), Grand Theft and Criminal Mischief. (*Id.*, p. 5). At trial, the State used the evidence of the burglary at 300 Ada Wilson to prove petitioner's intent and to rebut petitioner's claim that he lacked knowledge of the burglary and was merely at the wrong place at the wrong time.

After a jury trial, petitioner was found guilty as charged. On November 1, 2002 petitioner was adjudicated guilty and sentenced as a habitual felony offender to twenty 20 years imprisonment on Count 1 and a concurrent one year term on Count 2. (*Id.*, pp. 39-45). The Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions and sentences without written opinion on January 9, 2004. *Nguyen v. State*, 864 So.2d 406 (Fla. 1st Dist. Ct. App. 2004) (Table) (copy at Ex. F).

On June 3, 2004 petitioner filed a motion for post-conviction relief pursuant to FLA. R. CRIM. P. 3.850, raising four grounds of ineffective assistance of counsel. (Ex. G, pp. 1-9). The trial court denied relief in an order dated June 18, 2004. (*Id.*, pp. 10-54). The denial order was affirmed by the First DCA without written opinion on September 21, 2004, *Nguyen v. State*, 883 So.2d 804 (Fla. 1st DCA 2004) (Table) (copy at Ex H). Petitioner filed his federal habeas petition on October 12, 2004. (Doc. 1).

## DISCUSSION

<u>Standard of Review</u>

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not

materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, --- U.S. ---, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an

unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

**Exhaustion and Default**

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

     (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process

---

[5]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888. Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. *See*, *e.g.*, *Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court). However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach. For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal

constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734.  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review petitioner's claims.

## Petitioner's Claims

### 1. Ineffective Assistance of Counsel

Petitioner's first claim is that his trial counsel rendered ineffective assistance in four respects: (1) he failed to object to improper jury instructions, (2) he failed to file a motion to sever to exclude testimony concerning evidence found at 300 Ada Wilson Avenue, (3) he failed to object to testimony concerning evidence found at 300 Ada Wilson Avenue, and (4) he failed to object to imposition of enhanced sentencing under Florida's Habitual Felony Offender statute.

### A.  Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some

conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

B.  Review of State Court Decision

The state court identified *Strickland* as the controlling legal standard, and denied relief.  (Ex. G, p. 10).

i.      Failure to object to jury instructions

In his first assignment of error, petitioner contended in state court, as he does here, that counsel was ineffective because he failed to object to the trial court's jury instructions on the burglary charge.  Specifically, petitioner contends the trial court's instruction on Burglary of a Structure and Attempted Burglary of a Structure as lesser included offenses of Burglary of an Unoccupied Dwelling (the offense of which he was charged) were improper because Burglary of a Structure is a second degree felony which is the same offense level as Burglary of an Unoccupied Dwelling.  He further contends the instructions were improper because "the evidence is clear that this was a dwelling and not a structure."  (Doc. 1, Ex. A, pp. 3-4).  According to petitioner, counsel should have objected to these instructions and requested an instruction on Burglary as a lesser included offense.  Petitioner argues he was prejudiced by counsel's alleged error because "the jury might reasonably

have been misled and the instructions caused the jury to arrive at a conclusion that it otherwise would not have reached." (*Id.*). The state court denied relief on the grounds that petitioner could not show prejudice since the jury found him guilty of the Burglary of a Dwelling count as charged. (Ex. G, p. 11).

The state court's denial of relief was not an objectively unreasonable application of *Strickland*. Petitioner's first contention--that the instruction on Burglary of a Structure was improper because that offense is a felony of the same degree as Burglary of an Unoccupied Dwelling--is incorrect as a matter of law. Under Florida law, Burglary of an Unoccupied Structure is a third degree felony, a less serious offense than a second degree felony. *See* Fla. Stat. § 810.02(4)(a). Thus, counsel's failure to object to the instructions on that basis was not objectively unreasonable.

Petitioner's second contention--that the instructions on Burglary of a Structure and Attempted Burglary of a Structure were improper because the evidence showed that the subject property was a dwelling, not a structure--is also incorrect as a matter of law. Florida's standard jury instructions for Burglary of a Dwelling consist of the general burglary instruction (which presumes a structure) accompanied by an instruction on circumstances that enhance the penalty for burglary, for example, if the structure entered was a "dwelling."[6] Fla. Std. Jury Instr.

---

[6]The Florida Standard Jury Instructions in Criminal Cases provides:

Burglary § 810.02, Fla. Stat.

To prove the crime of Burglary, the State must prove the following three elements beyond a reasonable doubt:

1. (Defendant) [entered] [remained in] a [structure] [conveyance] owned by or in the possession of (person alleged).

2. (Defendant) did not have the permission or consent of (person alleged), or anyone authorized to act for [him] [her], to [enter] [remain in] the [structure] [conveyance] at the time.

3. At the time of [entering] [remaining in] the [structure] [conveyance] (defendant) had a fully-formed, conscious intent to commit the offense of (crime alleged) in that [structure] [conveyance].

. . . .

(Crim.) 13.1.   The trial court explained this during the jury instruction charge conference:

> THE COURT: The general burglary instruction talks about burglarizing a structure.  The enhancement is if you find it's a dwelling.  So what Mr. Robinson [the prosecutor] is suggesting, which I think is correct, we just instruct on the issue of burglary, and it's presumptively a structure, and then they [the jurors] have to make a specific finding or --
>
> MR. ROBINSON [prosecutor]: Right.  It read, If you find that while defendant --well, it says made no assault, was unarmed, structure was a dwelling, you should find him guilty of burglary of a dwelling.  I think the Court can use that and strike out the assault and unarmed issues because they're not relevant.

(Ex. B, p. 145).  In charging the jury, the trial court gave the following instruction on the Burglary of an Unoccupied Dwelling charge:

> Before you can find the defendant guilty of burglary, the State must prove the following three elements beyond a reasonable doubt: First, that Mr. Nguyen entered or remained in a structure owned by or in the possession of Thomas Forrest; secondly, that Mr. Nguyen did not have the permission or consent of Mr. Forrest, or anyone authorized to act for him, to enter or remain in the structure at the time; and thirdly, that at the time of entering or meaning in the structure, Mr. Nguyen had a fully-formed conscience intent to commit the offense of theft in that structure.
>
> . . . .

---

Enhanced penalty; give if applicable

The punishment provided by law for the crime of burglary is greater if the burglary was committed under certain aggravating circumstances. Therefore, if you find the defendant guilty of burglary, you must then consider whether the State has further proved those circumstances.
. . . .

Structure is a dwelling

If you find that while the defendant made no assault and was unarmed, the structure entered was a dwelling, you should find [him] [her] guilty of burglary of a dwelling.

See Fla. Std. Jury Instr. (Crim.) 13.1.

A structure means any building of any kind, either temporary or permanent, that has a roof over it and the enclosed space of ground and outbuildings immediately surrounding that structure.

The punishment provided by law for the crime of burglary is greater if the burglary was committed under certain aggravating circumstances. Therefore, if you find the defendant guilty of burglary, you must then consider whether the State has further proved those circumstances.

If you find that while the defendnat made no assault and was unarmed, the structure entered was a dwelling, you should find him guilty of burglary of a dwelling.
. . . .

A dwelling means a building of any kind, including any attached porch, whether such building is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the enclosed space of ground and outbuildings immediately surrounding it. Therefore, if you find the defendant guilty of burglary, it will be necessary for you to state in your verdict whether the defendant entered a structure that was a dwelling.

(Ex. B, pp. 191-92). There was nothing misleading about the instructions. *See* Fla. Std. Jury Instr. (Crim.) 13.1. Significantly, it is petitioner's contention that counsel should have "requested burglary as the next immediate lesser included offense. . . ." (Doc. 1, Ex. A, p. 3). That is exactly the instruction that was given. Because petitioner cannot establish that counsel's actions were objectively unreasonable, this ground of ineffective assistance must fail. Furthermore, as the Rule 3.850 court concluded, petitioner cannot establish prejudice. Petitioner has not, and cannot establish a reasonable probability that had counsel done everything petitioner proposes--objected to the instructions on the lesser included offenses and requested an instruction on burglary--the result of the proceeding would have been different. The jury found the State proved all the elements of Burglary of an Unoccupied Dwelling as charged--the elements of burglary plus the aggravated circumstance of the structure being a dwelling.

ii.    **Failure to "file motion for severance to exclud[e] any testimony concerning evidence found in the home of 300 Ada Wilson Avenue."**

iii.    **Failure to object to Debra Little's testimony concerning evidence taken from her home at 300 Ada Wilson Avenue**

In Grounds 2 and 3 of his ineffective assistance claim, petitioner faults counsel for failing to attempt to exclude evidence concerning the burglary of 300 Ada Wilson Avenue. That residence was owned by Debra Little and was the dwelling petitioner's co-defendant was charged with burglarizing. Petitioner argues counsel should have attempted to exclude the evidence because he was not charged with burglarizing the home, there was no pattern that he and his co-defendant had committed any crime together, and the testimony was irrelevant. Petitioner contends the testimony "tended to prejudice the jury," and that had counsel attempted to exclude the testimony the State would not have had sufficient evidence to convict him of burglary of 1006 Lakewood Road.

The Rule 3.850 court denied relief as follows:

> [T]he Defendant raises two claims of ineffective assistance of counsel based on the admission of *Williams* Rule evidence in the form of testimony from witness Debra A. Little. A review of the record, however, shows that counsel's actions were not deficient. The State first filed a "Notice of Intent to Offer Evidence of Inseparable Acts and/or Other Crimes or Acts" on July 10, 2002. The Court held a *Williams* Rule Hearing before the trial. After hearing arguments from both the State and Defense, the Court found that the evidence would be admissible. Before Ms. Little's testimony, the Court gave the jury the *Williams* Rule instruction. Counsel did attempt to exclude that evidence, and cannot be found ineffective for merely failing to obtain a favorable ruling.

(Ex. G, p. 11) (footnotes omitted).[7]

---

[7]The *Williams* Rule is named after the case of *Williams v. State*, 110 So. 2d 654 (Fla. 1958), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), and is codified at Fla. Stat. § 90.404(2)(a). Under the rule, evidence of other crimes may be admitted if relevant to show motive, absence of mistake, common scheme, identity, or a system or pattern of criminality such that the prior offense evidence is relevant to an essential aspect of the offense at issue. Such evidence is inadmissible to prove bad character or propensity to commit crimes. *See also Heuring v. State*, 513 So. 2d 122 (Fla. 1987).

The state court's finding that counsel did attempt to exclude the evidence at issue is presumed correct, and is amply supported by the record. On July 10, 2002 the State filed a Notice of Intent to Offer Evidence of Inseparable Acts and/or Other Crimes or Acts which described in detail the evidence at issue. (Ex. A, pp. 5-7). Defense counsel objected, and a hearing was held before trial on September 18, 2002. At the hearing, defense counsel aggressively argued that the evidence should not be admitted. (Ex. B, pp. 36-46). The court ruled that the evidence was admissible, finding that "the facts or issues which that evidence is offered to prove is material and of significant consequence to this action, that the relationship between collateral evidence and the material facts that the State needs to prove the crime charged have a logical tendency to prove the issue of motive, intent, knowledge and absence of mistake, which are both relevant to *Wiliams* Rule and to collateral activities, and that . . . the relevancy of this evidence outweighs any prejudicial value." (*Id.*, pp. 43-44).

During trial, when the prosecution began examining Deputy Hall concerning the items he found in Mr. Cunningham's possession when the officer made contact with petitioner and Mr. Cunningham, defense counsel objected. (*Id.*, pp. 103-04). The objection was overruled; however, at defense counsel's request the court gave the following limiting instruction:

THE COURT: Ladies and gentlemen of the jury, . . .

The State in this case has charged the defendant regarding an alleged burglary and criminal mischief regarding the property of a Thomas Forrest at 1006 Lakewood Road, and you're about to receive evidence of a crime that allegedly occurred at another residence, okay? That crime is not charged here. What I want to make sure is that you understand that you're about to receive evidence concerning another crime allegedly committed by Mr. Cunningham in this case, not Mr. Nguyen. He's not been charged with that offense. And that evidence will be considered by you for the very limited purposes of proving intent, knowledge or absence of mistake on the part of Mr. Nguyen, and you shall consider it only as it relates to those issues.

However, Mr. Nguyen is not on trial for any crime that is not included in the information in this case, and the information in this case

charges the burglary and criminal mischief relative to the property at 1006 Lakewood Road only, okay?

(*Id.*, pp. 104-06).

Upon Debra Little being sworn and identifying her address, defense counsel again asked that the court give the limiting instruction.  The court granted the request and instructed the jury that the evidence they were about to receive concerning an alleged burglary and theft from Ms. Little's home at 300 Ada Wilson Avenue was to be considered by the jury for the limited purpose of proving motive, intent, knowledge or absence of mistake; that the jury should consider it only as it related to those issues; and that petitioner was not on trial for any crime that was not included in the Information.  (*Id.*, p. 116).

The foregoing conclusively rebuts petitioner's allegation that counsel failed to attempt to exclude evidence of the theft and burglary occurring at 300 Ada Wilson Avenue. Defense counsel took every opportunity to exclude the evidence and, when that failed, attempted to mitigate its effect by requesting a limiting instruction.  The state court's conclusion that petitioner failed to establish deficient performance by trial counsel was not an objectively unreasonable application of the *Strickland* standard.

To the extent petitioner suggests counsel should have filed a motion to sever his trial from that of co-defendant Cunningham so that the jury would not hear the evidence at issue, his claim must fail.  Petitioner has not established a reasonable probability that such a motion would have been granted.  Further, even assuming petitioner and Mr. Cunningham were tried separately, petitioner has not established a reasonable probability that the evidence of the uncharged crime would not have been admitted and he would have been acquitted.

    iv.    <u>Failure to object to imposition of enhanced sentencing under the Habitual Felony Offender ("HFO") statute</u>

Petitioner asserts trial counsel was ineffective for failing to object to the imposition of enhanced sentencing under the HFO statute on the grounds that the trial court failed to adjudicate petitioner as qualifying as an HFO.  The Rule 3.850 court denied relief, finding the claim to be conclusively refuted by the transcript of

petitioner's sentencing hearing in which the court specifically found petitioner qualified as an HFO. (Ex. G, p. 12 and n. 5). The state court's findings are presumed correct and, once again, are amply supported by the record. At the November 1, 2002 sentencing hearing, the State introduced evidence of petitioner's eligibility for HFO sentencing. After receiving the evidence and hearing argument and statements from counsel and petitioner, the court ruled as follows:

>THE COURT: I'm going to find that the State has met its burden of proof to establish that the defendant has been convicted of two or more prior felonies and that the offenses were committed within five years of the date of the last felony conviction, and that there's no evidence that any of those convictions have been set aside.
>
>MR. ROLLO [defense counsel]: Are you finding, Your Honor, also that the safety of the community is required as far as finding that Mr. Nguyen qualifies as HFO?
>
>THE COURT: Yes.
>. . . .
>
>THE COURT: I am going to adjudicate you guilty and sentence you to 20 years in state prison as a habitual felony offender.

(Ex. C, Tr. of 11/1/02 Sentencing Proceeding at 6 & 13). Based on the state court's findings, it was not an objectively unreasonable application of *Strickland* for the court to conclude that there was no basis for the objection petitioner proposes, and thus, petitioner failed to establish deficient performance and prejudice under *Strickland*.

### 2. Trial Court Erred in Overruling Petitioner's Objection to State's Use of *Williams* Rule Evidence

Petitioner's next claim is that his Fourteenth Amendment rights to due process and a fair trial were violated when the trial court overruled his objection to the State's use of evidence concerning his participation in the 300 Ada Wilson Avenue burglary for which he was not charged. Petitioner contends that, because the testimony was highly prejudicial and was used solely to prove bad character or propensity, it was inadmissible. He states he raised this claim in his direct appeal. (Doc. 1, p. 5 & ex. B). Respondent asserts a procedural default defense, arguing that

when petitioner challenged the trial court's ruling on the *Williams* Rule evidence in his direct appeal, he raised the issue as a matter of state evidentiary law, not a violation of the United States Constitution.  (Doc. 8, pp. 13-15).  Thus, petitioner is procedurally barred from bringing his claim in this § 2254 proceeding.  Respondent is correct.

On direct appeal from his conviction, petitioner argued that admission of the *Williams* Rule evidence was in contravention of Florida statutory law, as well as Florida case law concerning the admissibility of evidence of an uncharged offense or collateral crimes.  Petitioner's state appellate brief did not refer to the federal due process issue raised in the instant habeas petition. (Ex. D, pp. 10-12).  Moreover, the only cases cited in support of the claim raised on appeal were state court cases that made no mention of the United States Constitution and cited no federal cases.  Although at the conclusion of petitioner's brief he made a single mention of having been deprived of his right to a fair trial, this lone assertion is not so particularized as to call to mind a specific right protected by the Constitution.  Indeed, it could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *See Zeigler*, 345 F.3d at 1308 n.5.  Petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to [this court]."  *Id.*; *see also Duncan v. Henry*, *supra*; *Baldwin v. Reese*, *supra*.  Accordingly, petitioner cannot be said to have exhausted his federal due process claim in the state courts.  As the state courts would now find any efforts to gain relief on this claim to be procedurally barred because the issue should have and could have been raised on direct appeal, *see e.g., Davis State*, 648 So.2d 107, 108-09 (Fla. 1995), this court should hold the claim to be procedurally defaulted.

Petitioner does not argue cause and prejudice to overcome the procedural default.  Nor does he assert that he is factually innocent, as required, to show a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. at 324, 115 S.Ct. at 865.

As petitioner has failed to make the requisite showings to excuse his default, he is not entitled to federal habeas review of Claim Two.[8]

### 3.    Trial Court Erred in Denying Petitioner's Motion for Judgment of Acquittal

Petitioner claims his Fourteenth Amendment rights to due process and equal protection were violated when the trial court denied his motion for judgment of acquittal. Petitioner contends that, because the State failed to prove all the elements of the charged offenses, including the requisite intent, and further failed to rebut petitioner's reasonable hypothesis of innocence, the trial court erred in denying the motion.  (Doc. 1, p. 6, & ex. C).  Petitioner states he raised this claim in his direct appeal.  (Doc. 1, p. 6).  Respondent's position is unclear.[9]

To the extent respondent suggests Claim Three fails to present a claim cognizable on federal habeas review, the undersigned disagrees.  In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In *Jackson v. Virginia*, 443 U.S. 307, 312, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979), the Court decreed that a federal court sitting in habeas corpus must declare invalid under the Due Process Clause a conviction obtained in violation of the *Winship* standard.  The Court explained:

---

[8]In his reply, petitioner addresses the procedural default issue simply by arguing that "to allege ineffective assistance of counsel is a claim of federal and state law."  (Doc. 11, p. 2).  However, respondent has not asserted a procedural default defense to petitioner's ineffective assistance claim; rather, he has asserted that defense to the claims of trial court error petitioner asserts in Claims 2-4 of the petition.  Petitioner's reply does not address the procedural default issue as to those claims.

[9]Respondent first argues that petitioner did not exhaust "his federal claim" in state court. (Doc. 8, p. 16).  He then argues that petitioner "presented the exact claim in his direct appeal . . . as he does in his petition," but that petitioner "has failed to properly present a federal due process claim based on insufficiency of the evidence in his petition." (*Id.*, p. 17). Respondent concludes by asserting a procedural default defense, arguing that "[b]ecause Nguyen failed to present the federal issue in State Court, he must show cause for such failure and prejudice resulting therefrom." (*Id.*, p. 19) (citations omitted).  It is unclear to this court whether it is respondent's position that the instant claim is not cognizable on federal habeas review, or whether he concedes that the claim raised in the petition states a federal due process claim based on insufficiency of the evidence but urges the court to find it procedurally defaulted because on direct appeal petitioner did not claim any violation of his federal constitutional rights or cite any federal law or authority with regard to the issue

> **[A] state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim. Thus, assuming that state remedies have been exhausted and that no independent and adequate state ground stands as a bar, it follows that such a claim is cognizable in a federal habeas corpus proceeding.**

*Jackson*, 443 U.S. at 316, 99 S.Ct. at 2787 (citations omitted). *See also Wilcox v. Ford*, 813 F.2d 1140 (11th Cir. 1987) (construing habeas petitioner's claim that the evidence at trial was insufficient to support his conviction as a federal due process claim and reviewing under the *Jackson* standard).

In the instant case, petitioner claims the trial court's denial of his motion for judgment of acquittal based on legally insufficient evidence violated his rights under the Due Process Clause of the Fourteenth Amendment because the State failed to prove his guilt. According to petitioner, the evidence proved only that petitioner was in mere proximity to the person committing the crime and failed to prove intent and to rebut petitioner's hypothesis of innocence that he was simply in the wrong place at the wrong time. (Doc. 1, ex. C). Alternatively, petitioner argues that, at best the evidence supports a conviction on the reduced charge of trespass. Such a due process claim of insufficient evidence to sustain a conviction is cognizable on federal habeas review. However, petitioner's equal protection claim should be summarily dismissed because it plainly appears from the face of the petition and attached exhibits that petitioner neither claims nor alleges facts to suggest his conviction was a result of discriminatory treatment.

Ordinarily, the court would next decide the issue of procedural default raised by respondent. However, the court need not decide that issue because even giving petitioner the benefit of the doubt that the legal and factual basis of the claim presented on direct appeal is the same as the due process claim he presents to this court, petitioner is not entitled to relief.

### A. Clearly Established Federal Law

As discussed earlier, due process requires that the state present sufficient evidence to the trier of fact to prove each element of the offense beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 316, 99 S. Ct. at 2787. The due process issue is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S. Ct. at 2789; *Schlup*, 513 U.S. at 330, 115 S.Ct. at 868 ("The *Jackson* standard, which focuses on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, if credited, could support the conviction."); *Fallada v. Dugger*, 819 F.2d 1564, 1570 (11th Cir. 1987).

The test is a limited one, and "[i]t is *not* required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.), *cert. denied*, 484 U.S. 925 (1987) (emphasis added). "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Id.*; *accord Carter v. Montgomery*, 769 F.2d 1537, 1542 (11th Cir. 1985) (it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.

The sufficiency of the evidence is determined by reference to the substantive elements of the offense as defined by state law. *Wilcox* at 1143 ("it is necessary to refer to the essential elements of the crimes as defined by state law" (citing *Jackson*) (other citations omitted)). In Florida, the crime of burglary is defined as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein." Fla. Stat. § 810.02 (2001). The Florida legislature has defined "dwelling" such that the definition includes the curtilage. *Baker v. State*, 636 So.2d 1342 (Fla. 1994). The fenced-in portion of property is considered part of the curtilage of a residence. Fla. Stat. § 810.011 (2001); *Chambers v. State*, 700 So.2d 441 (Fla. 4th Dist. Ct. App. 1997); *Hamilton v. State*, 645 So.2d 555 (Fla. 2nd Dist. Ct. App. 1994) (for purposes of the burglary statute "curtilage" includes the grounds surrounding the property, so long as it is enclosed).

### B.  Review of State Court Decision

The state appellate court affirmed petitioner's convictions without written opinion.  In viewing "the evidence in the light most favorable to the prosecution," it cannot be said that the state court unreasonably applied the *Jackson* standard when it denied relief on petitioner's insufficient evidence claim.  The evidence showed that Larry Johnson observed petitioner and his co-defendant inside the gated fence of the home located at 1006 Lakewood Road belonging to Thomas Forrest.  They did not have permission to be on Mr. Forrest's property.  Deputy Hall was dispatched to Mr. Forrest's home to check an alarm call at the residence.  Upon arrival, Deputy Hall saw that the front of the home was secured, but that a window in the back of the home had been broken.  A brick was found inside the home, just inside the broken window in the middle of a bed.  Mr. Forrest's windows were not armed, and the only way the motion detector in the alarm system could have been triggered was by motion inside the house.  The motion sensors were located in the main living room of the house.  After securing the home, Deputy Hall spoke with Larry Johnson.  Johnson gave Deputy Hall a description of the men he observed exiting from inside Mr. Forrest's fenced yard, and also directed police to a home where petitioner and his co-defendant were apprehended.   This evidence, coupled with evidence of petitioner's participation in an uncharged similar burglary involving theft occurring on the same day, in the same neighborhood, around the same time, with the same modus operandi, is sufficient evidence to permit a reasonable jury to conclude that petitioner entered the dwelling located at 1006 Lakewood Road without Mr. Forrest's permission and with the intent to commit theft.  Petitioner is not entitled to relief on this claim.

### 4.  Trial Court Erred in Sentencing Petitioner as an HFO without Requiring the State to Prove Petitioner's Prior Convictions by Fingerprint Comparison

Petitioner claims his Fourteenth Amendment right to due process was violated at sentencing when the trial court sentenced him as an HFO without requiring the State to perform a fingerprint comparison to link him to the certified copies of judgments the State submitted as evidence of petitioner's prior felony convictions.

Petitioner contends a fingerprint comparison was needed to sufficiently identify him as the person named in the certified copies of convictions. He further argues that the trial court erred in permitting the State to introduce certified copies of the criminal record without a fingerprint comparison. (Doc. 1, p. 6 & Ex. D). Respondent contends this claim raises an issue that is purely a matter of state law; thus, it is not cognizable on federal habeas review. Alternatively, respondent argues that petitioner procedurally defaulted his claim because when he presented the issue to the state courts on direct appeal, his substantive arguments were based exclusively on Florida state law--he did not "fairly present" a federal due process claim to the state court.

The sentencing error raised in Claim Four is based purely on state law--the interpretation of state sentencing procedures and case law. Federal habeas relief is available to correct only constitutional injury. 28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing

guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S.Ct. 668. The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent. (*See* Ex. C). In addition to submitting the certified copies of the judgments of conviction, the State presented a booking photo of the person convicted of the predicate felonies which established petitioner's identity. Moreover, petitioner did not dispute that he was the person named in the certified copies of the convictions of the predicate felonies, nor did he contest the findings of the Pre-sentence Report which listed the felony convictions in his prior criminal history. Accordingly, petitioner has not established that his sentencing was fundamentally unfair.

## CONCLUSION

Petitioner procedurally defaulted his claim of trial court error raised in Claim Two. The claim of sentencing error raised in Claim Four provides no basis for federal habeas relief. As to the remaining claims, petitioner has failed to establish that the state court's denial of relief was contrary to, or an unreasonable application of, clearly established Federal law.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Binh Van Nguyen*, in the Circuit Court of Escambia County, Florida, case number 01-5644, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 16th day of May, 2005.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).